# In the United States Court of Federal Claims

No. 10-289 C
(Filed Under Seal July 28, 2010)
(Reissued: August 4, 2010[1/])

| | |
|---|---|
| FAS SUPPORT SERVICES, LLC, | ) |
| Plaintiff, | ) Post-award bid protest; jurisdiction to |
| v. | ) review suspension; review of discretion |
| | ) under FAR 9.405(d)(3) not to reinstate |
| THE UNITED STATES, | ) offeror; Competition In Contracting Act |
| Defendant and | ) of 1984, Pub. L. No. 98-369, § 2713, 98 |
| | ) Stat. 1175 (1984). |
| VINNELL BROWN & ROOT LLC, | ) |
| Intervenor-Defendant. | ) |

*John C. Dulske*, San Antonio, Texas, for plaintiff. *Joan Kelley Fowler Gluys* and *Bryan Kost*, San Antonio, Texas, of counsel.

*Elizabeth M. Hosford*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director and *Martin F. Hockey*, Assistant Director. *Theodore T. Richard*, Major, U. S. Air Force, Executive Officer and Trial Attorney, Commercial Law and Litigation Directorate, Arlington, Virginia, of counsel.

*Thomas C. Papson*, Washington, D.C., for intervenor. *Todd J. Canni* and *Justin M. Ganderson*, Washington, D.C., of counsel.

---

## OPINION

---

**Merow**, *Senior Judge*

---

[1/] This Opinion was originally filed under seal on July 28, 2010, pursuant to the Protective Order filed May 14, 2010. On August 4, 2010, parties to the above-captioned action filed a Stipulation that the Opinion may be released without redactions. That Stipulation is hereby APPROVED and the Opinion is released for publication.

Plaintiff, FAS Support Services, LLC, commenced this procurement protest action, pursuant to 28 U.S.C. § 1491(a) and (b)(1), contesting the award of a United States Air Force contract for base operations and maintenance located in Turkey and Spain. The successful offeror for the contract intervened in this action. Defendant and the intervenor have filed motions to dismiss and all parties have filed motions for judgment on the administrative record of the procurement pursuant to RCFC 52.1. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Oral argument on the pending motions was held on July 13, 2010.

---

## FACTS

This procurement protest litigation was initiated by the Complaint for Injunctive and Declaratory Relief filed by FAS Support Services, LLC on May 13, 2010. The relevant portion of the procurement commenced with the Solicitation (No. FA 5613-08-R-5010), dated February 13, 2009, issued by a unit of the United States Air Force located in Kaiserslautern, Germany. (Administrative Record ("AR") 000056.) The solicitation sought offers to perform base operation and maintenance services at six facilities located in Turkey and Spain – the Turkey/Spain Base Maintenance Contract ("TSBMC"). The estimated cost of the procurement approached $400,000,000. (AR 000403.) The procurement was designed to obtain operational efficiencies and savings by consolidating in one contract the functions then being performed under two separate contracts, the Turkey Base Maintenance Contract ("TBMC") and the Spain Base Maintenance Contract ("SBMC"). (AR 00363.) The incumbent contractors were Vinnell Brown & Root, LLC ("VBR") for the TBMC and Spain Agility First Support LLC ("AFS") for the SBMC. (AR 000788, 001469.)

On May 22, 2009, the extended closing date for offers, two offerors submitted proposals to the Air Force in response to the February 13, 2009 Solicitation. A proposal was submitted by VBR, the TBMC incumbent, comprised of a joint venture between Northrop Grumman Enterprise Management Services Corp. and Kellogg Brown & Root Services, Inc. (AR 000473.) AFS, the SBMC incumbent, also submitted a proposal. AFS was comprised of a joint venture between First Support Services, Inc. ("FSS") and Taos Industries ("Taos"), a subsidiary of Agility Defense and Government Services ("Agility"). (AR 001789.) The proposal for the TSBMC was submitted by FAS Support Services, LLC ("FAS"), a Delaware limited liability company whose owners were First Support Services, Inc., a Texas corporation (51%)

and Taos Industries, Inc., a Delaware corporation (49%).  (AR 002681.)  The proposal explained the arrangement stating, "Agility and First Support have previously teamed together as AFS JV on the Spain Base Maintenance Contract.  For the TSBMC, we have organized differently with First Support as the managing partner and Taos-Agility as the minority JV partner, now named FAS."  (AR 001789.)

The proposals were evaluated by the Air Force Source Selection Evaluation Team ("SSET") with the past performance portion of the proposals being evaluated by the Performance Confidence Assessment Group ("PCAG").  (AR 002574-75; 002592-93; 002607-13.)  The contracting officer provided the Source Selection Authority ("SSA") with the initial results of all evaluations on July 20, 2009.  (AR 2065-2106.)  It was determined that both VBR and FAS were in the competitive range and discussions were commenced with both offerors.  (AR 002145-50.)  Discussions were closed on September 30, 2009.  (AR 002158.)  On October 9, 2009, Final Proposal Revisions ("FPR") were requested from the offerors, and each offeror was furnished its pre-FPR ratings.  (AR 00046, 002168.)  The ratings for the "Technical Acceptability" factors were "Acceptable" for both and both received "substantial confidence" as the rating for the "Past Performance" factor.  The "Price" factor showed VBR's offer to be slightly below FAS's offer.  (AR 002168.)

In response to the Air Force request for FPRs, FAS reported no further changes to its proposal (AR 002062), but VBR changed several pages in its technical proposal comprising an employee severance approach.  (AR 001238, 001342.)  The Air Force had previously notified VBR that this approach was unacceptable.  (AR 002597.)  This change resulted in an "unacceptable" rating for VBR's FPR under the Subfactor 1, Phase-In for Technical Acceptability.  In its FPR, VBR also revised its pre-FPR pricing for all contract line items reducing the total offer price by approximately 5.9 percent.  (AR 001239-59; 002599.)

The contracting officer presented a final decision briefing to the SSA on November 16, 2009.  As FAS did not change its proposal the FPR ratings were unchanged – "Acceptable" for "Technical Acceptability" and "Substantial Confidence" for "Past Performance."  (AR 002245.)  VBR's ratings changed in that for "Technical Acceptability" the FPR was rated "Unacceptable" for "Subfactor 1 - Phase-In" and "Acceptable" for "Subfactor 2 - Technical Proposal."  VBR's FPR received a "substantial confidence" for "Past Performance."  Based on these ratings the SSET recommended that the contract be awarded to FAS as the only technical

acceptable offeror (AR 002303) and preparation of the necessary documents to obtain a Source Selection Decision from SSA commenced. (AR 000047.)

On November 16, 2009, the Defense Logistics Agency ("DLA"), pursuant to Federal Acquisition Regulation ("FAR") Subpart 9.4, suspended Agility Defense Government Services, Inc. and Taos Industries, Inc. from government contracting as affiliates of Public Warehousing Company ("PWC"), a company organized under the laws of Kuwait, which had been indicted on November 9, 2009, for criminal conspiracy, major procurement fraud and wire fraud by a federal grand jury in the United States District Court for the Northern District of Georgia. (AR 002627-28.)

The news that PWC, Agility and Taos were suspended from government contracting and placed on the FAR 9.404 Excluded Parties List System ("EPLS") reached the Air Force Contracting Officer for the pending TSBMC procurement on the morning of November 17, 2009. (AR 000047.) The contracting officer became concerned that these suspensions might impact the award of the TSBMC because Taos held a 49 percent ownership interest in FAS. (*Id*.) This concern was particularly addressed to the FAR 9.104-9.105 responsibility determination the contracting officer would have to make in connection with a contract award. (*Id*.) On November 24, 2009, DLA contacted the TSBMC Contracting Officer with an inquiry as to the ownership and control of FAS. (AR 002682-84.) The TSBMC Contracting Officer responded to DLA on November 25, 2009, providing the following interpretation, which comprised an excerpt from a FAS response to a July 20, 2009 Air Force inquiry as to foreign ownership which occurred during discussions. (AR 002615, 002681.):

> The offeror, FAS Support Services, LLC (FAS) is a Delaware limited liability company. FAS will be the prime contractor responsible for all performance under the Turkey Spain Base Maintenance Contract. The members (owners) are First Support Services, Inc. (a Texas corporation), the Managing Member and majority (51%) owner and Taos Industries, Inc. (a Delaware corporation), which owns the remaining 49% interest.

On November 25, 2009, the TSBMC Contracting Officer drafted a memorandum to FAS stating her knowledge that DLA had placed Taos Industries, Inc. on the Excluded Parties List System and requesting information "be provided in order to determine contractor responsibility in accordance with FAR 9.1." (AR

002745.) The information sought was set forth in a series of questions mainly dealing with the functions that Taos, its officers and its employees would perform under the TSBMC. A response was requested by December 1, 2009. (*Id.*) Also on November 25, 2009, upon receiving information concerning the DLA suspension of Taos and the resulting need to re-certify FAS responsibility together with the possibility that FAS might also be suspended, the SSA approved the reopening of discussions with both offerors. (AR 002709.) It was contemplated that the discussions with FAS were to clarify contractor responsibility questions and discussions with VBR were to address the mistake or deficiency in its FPR change pages and explain its FPR downward pricing adjustments. (AR 002760.)

Before the Air Force initiated reopened discussions, on November 27, 2009, DLA suspended FAS and added it to the EPLS "based on its affiliation to PWC, a criminally indicted company." (Compl., Ex. B.) The suspension notice to FAS, in accord with FAR 9.407-3(c)(5), provided that "[w]ithin 30 calendar days after receipt of this notice, you or a representative on your behalf may submit, either in person or in writing, or both, information and argument in opposition to the suspension." (*Id.*)

On November 30, 2009, the TSBMC Contracting Officer discovered that FAS was placed on the EPLS and by a letter, dated December 2, 2009, to FAS noted that FAR 9.405 provides that "proposals received from any contractor listed on EPLS '… shall not be … included in the competitive range, nor shall discussions be conducted with a listed offeror during a period of ineligibility …' ." (AR 002748.) Accordingly, the contracting officer concluded that "the proposal submitted by FAS is hereby excluded from further consideration and is not eligible for award." (*Id.*)

The Air Force reopened discussions with VBR which were concluded on December 7, 2009. (AR 002623.) During the discussions, VBR explained that the revised severance plan which had caused its FPR to be rated "Unacceptable" was submitted in error in that it inadvertently submitted the wrong page from a prior plan. (AR 002620.) The correct plan caused the rating to be returned to "Acceptable." (AR 002413.) Also during the discussions VBR adequately explained the price reduction in its FPR as resulting from changes in foreign exchange rates. (AR 002622.) The Air Force evaluators determined VBR's proposed target price was fair and reasonable. (AR 002624-25.) A December 10, 2009, briefing by the contracting officer recommended awarding the TSBMC to VBR pending receipt of an acceptable second FPR. (AR 002310-94.)

When originally faced with the suspension of Taos and Agility on November 17, 2009, a First Support Services, Inc.'s corporate officer notified the TSBMC Contracting Officer, by a message dated November 18, 2009, that efforts would be made to have Taos' name removed from the EPLS but if this could not be accomplished in short order, FSSI was "[p]repared to disengage from the partnership if necessary and proceed with the bid alone."  (AR 002650.)

By a letter dated December 4, 2009 to DLA, FSSI and FAS responded through counsel to DLA's November 27, 2009 suspension notice of FAS.  The letter stated in part (AR 002693-94):

> FSSI can appreciate the present responsibility concerns raised by the PWC indictment, and understands why DLA is interested in identifying those business entities that are controlled by PWC.  DLA has identified Agility as an entity that is controlled by PWC, and as an extension of that relationship, there are legitimate questions about the connections between Agility and other Government contractors.  Those questions apparently led DLA to suspend FAS and FAS2.

> While it could be argued that FSSI, as the majority owner of FAS and FAS2, has always been in control of FAS and FAS2, FSSI  has taken affirmative action to totally eliminate Agility's interest in FAS and FAS2.  FSSI and Agility executed a "Withdrawal and Transfer of Ownership Agreement" on December 2, 2009, a copy of which is attached.  Pursuant to that Agreement, Agility has withdrawn as a member of FAS and FAS2.  Thus at this time, Agility has no interest in either FAS or FAS2, and therefore FAS and FAS2 are controlled solely by FSSI.  Based on the change of ownership discussed above, FSSI has eliminated the possibility of influence or control by Agility over the operations or affairs of FAS and FAS2.

> In addition to the action taken with regard to FAS and FAS2, FSSI is also reviewing its only other business relationship with Agility to determine whether any changes are necessary.  As discussed above, FSSI has a minority ownership interest in Spain AFS, LLC and Spain AFS, S.L., both of which are controlled by Agility.  Because the contract being performed by these entities was in place at the time Agility was

suspended, its performance is not affected by the suspension action against Agility. FSSI is committed to satisfying its obligations under the Air Force contract and to making sure that the Government receives full value for the services provided.

Agility's minority interest in FAS and FAS2 has been extinguished, and thus there is no basis to conclude that Agility is affiliated with either FAS or FAS2. Accordingly, FSSI respectfully requests that the suspension of FAS and FAS2 be lifted and that their names be removed from the EPLS. If you need any additional information or have any questions, please call me.

On December 9, 2009, DLA terminated FAS Support Services, LLC's suspension from contracting with the Government. The DLA letter stated in part (Compl., Ex. C.):

On behalf of the Defense Logistics Agency (DLA), I am terminating FAS Support Services, LLC's suspension from contracting with the Government which was imposed by letter dated November 27, 2009. Based on the termination of FAS Support Services, LLC's affiliation with The Public Warehousing Company, K.S.C., I have concluded that the FAS Support Services, LLC's continued ineligibility for Government contracts is not necessary.

This action is not a finding that FAS Support Services, LLC is presently responsible for any specific Government contract. The decision to terminate is based solely on the information currently before me and does not limit or restrict DLA or any other agency of the Government from instituting administrative action, including suspension or debarment, should new evidence become available which indicates that such action is necessary to protect the Government's interests. If such an action should be proposed, you will be given notice and afforded an opportunity to present information and argument in opposition to debarment prior to any final decision.

At 11:27 p.m. on December 9, 2009, FAS sent the TSBMC Contracting Officer an e-mail notification that DLA had removed the company from the EPLS on that

date.  FAS inquired if any additional information was needed to consider the company for the TSBMC award.  (AR 002657, 002662.)  The contracting officer did not open the e-mail until after her December 10, 2009 briefing recommending that the contract be awarded to VBR.  (AR 000049.)

FAR 9.405(d)3 provides that with respect to a suspended contractor, "[i]f the period of ineligibility expires or is terminated prior to award, the contracting officer may, but is not required to, consider such proposals, quotations or offers."  On December 11, 2009, the contracting officer issued a detailed written "Justification For Not Considering FAS' Proposal In 2nd FPR."  (AR 002758-64.)  The seven-page Justification opened with a summary of the contracting officer's determination as follows:

> 1.  In accordance with FAR 9.405(d)(3), Effect of Listing, and in consultation with the Source Selection Authority for solicitation FA5613-08-R-5010, I am exercising my discretion as Contracting Officer to continue to exclude FAS' proposal from the competitive range because there is not sufficient time to ask FAS to revise their proposal (including revised pricing and management plan for a shortened transition period) and explain how the change in management and ownership affects their technical, management and financial capabilities and demonstrate contractor responsibility.  During pendency of this competition, the Defense Logistics Agency (DLA) suspended FAS because it owned 49% of a suspended entity, Taos Industries.  DLA terminated the suspension when FAS divested itself of owning any part of Taos Industries.  Based on that suspension, I eliminated FAS from the competitive range and have concluded discussions with the other offeror, VBR.  I am ready to request a second FPR from VBR.  Time is of the essence in concluding this source selection in order to allow sufficient transition period starting on or about 15 January 2010 to enable full performance starting 1 April 2010.  FAS was higher priced than VBR and there is no likelihood that FAS would be the successful offeror even if I were to restore FAS to the competitive range, reopen discussions with FAS, and obtain and evaluate a second FPR from FAS.  Because there is no reasonable chance that FAS could win this award, due to its higher price, I am not going to restore FAS to the competitive range.

The Contracting Officer's Justification continued with a "rationale" in support of her decision. (AR 002758-64.) The rationale noted that, although reopening discussions after the offeror's FPR submissions could have resulted in easily resolving VBR's then deficiency, "upon the concurrence of the SSA, I decided not to reopen discussions at that time because the Government had at least one awardable offer (FAS), and because time is of the essence due to the intended start date for the transition period based on the date the incumbent contracts will expire." (AR 002759.) The rationale notes that a FAS explanation of the Taos divestiture would, "in my opinion, constitute a significant revision of its proposal." (AR 002761.) The rationale indicated that "[a] robust responsibility determination would be required to determine whether the mere divestiture on paper equated to a divesture [sic] in fact." (*Id*.) Without a teaming partner the rationale questioned whether FAS would obtain a "Substantial Confidence" rating for the "Past Performance" evaluation factor. (AR 002762.) The rationale also questioned whether FAS would remain technically acceptable in that it would be necessary to reopen discussions for explanations as to the source of its staff, management and other resources, and how it would meet the technical requirements of the solicitation without the support and participation of Taos Industries or other suspended affiliates. (AR 002762.) The rationale also discussed "Timeline issues" noting that "[t]o determine contractor responsibility, evaluate proposal viability, and re-open discussions with FAS requires a complete revision of the milestones as updated on 25 November 2009." (AR 002763.) It was indicated that "[t]he Government would incur additional cost and time delay because the SSET would be required to reconvene for the evaluation of FAS' revised proposal before we could close discussions and call for second FPRs." (*Id*.) The rationale concluded with a discussion of "reasonable chance to receive award," noting that VBR had, during discussions, successfully explained its downward pricing in its FPR with the result that the existing price differential between the offers had substantially increased. (AR 002764.) With the challenges ahead, the contracting officer considered "it is highly unlikely that FAS would submit a sufficiently lower priced proposal even if I reopened discussions." (AR 002764.) Thus, on the basis of its higher price and without credit for past performance activity by Taos and Agility, the contracting officer's rationale concluded that "FAS has no reasonable chance to receive the award." (*Id*.)

The SSA concurred with the contracting officer's decision not to restore FAS to the competitive range. (AR 002845.)

On December 11, 2009, FAS, through counsel submitted an agency level protest to the contracting officer requesting that FAS "be reinstated into the competitive range and, to the extent additional discussions are necessary, FAS requests discussions be conducted with FAS . . . ." (AR 002756.)  A footnote was included in the protest, stating: "FAS also alleges that it should not have been placed on the EPLS initially.  Specifically, FAS was not controlled by or otherwise affiliated with an entity on the EPLS.  However, this argument is rendered moot by the removal of FAS from the EPLS."  (AR 002755.)

On January 22, 2010, the contracting officer dismissed the agency level protest filed by FAS consistent with her prior December 11, 2009 determination that it was not in the best interest of the agency to reinstate FAS to the competitive range.  (AR 002768.)

The Air Force announced the award of TSBMC to VBR on January 22, 2010. (AR 002851.)  On January 27, 2010, FAS filed a protest with the United States Government Accountability Office ("GAO").  (AR 002968.)  The protest challenged the Air Force award decision for TSBMC and the decision not to allow FAS back into the competition upon its removal from EPLS.  The protest was supplemented on February 1, 2010.  (AR 002985.)  On April 21, 2010, GAO issued its decision denying the protest.  (AR 003090-99.)  The GAO declined to resolve whether FAS's suspension by DLA was improper because "[a]s our Office has held, suspension and debarment of a contractor is a matter of agency contract administration that we do not review."  (AR 003096.)  The GAO limited its examination to whether "the CO's actions in responding to DLA's lifting of the suspension were reasonable."  (*Id.*)  In regard to the CO's actions the GAO concluded "we think that the agency's concern regarding the delay to the procurement was reasonable, and in turn, provided a reasonable basis for declining to reinstate FAS's proposal into the competition."  (AR 003096-97.)  As the agency's concern regarding delay provided a reasonable, and independent basis not to reinstate FAS's proposal, GAO did not resolve whether the Air Force's conclusion that FAS would not have had a reasonable chance of obtaining an award of the TSBMC if it had been reinstated was reasonable.  (AR 003097 n.4.)

## DISCUSSION

### A.    Jurisdiction Over Complaint Count No. 1

Defendant and intervenor seek dismissal of Count No. 1 of the Complaint in which, "FAS protests the Government's decision to suspend FAS and place FAS on the EPLS." (Compl. ¶ 35.)  Dismissal is sought because it is argued that the court lacks jurisdiction to review the DLA suspension of FAS.  The argument notes that 28 U.S.C. § 1491(b)(1) provides jurisdiction over objections alleging violation of statute or regulation in connection with "a" procurement or "a" proposed procurement, whereas it is asserted that a suspension pursuant to FAR 9.405 does not address a specific procurement but excludes the contractor from obtaining any contracts with the Government.

The parties recognize that *Resource Conservation Group, LLC v. United States*, 597 F.3d 1238, 1245 (Fed. Cir. 2010) holds that implied-in-fact contract jurisdiction under 28 U.S.C. § 1491(a)(1) remains for application to protests where 28 U.S.C. § 1491(b)(1) does not provide a remedy.  By "implied-in-fact contract jurisdiction," the Federal Circuit has reference to "'an implied contract to have the involved bids fairly and honestly considered.'"  597 F.3d at 1242 (quoting *United States v. John C. Grimberg Co*., 702 F.2d 1362, 1367 (Fed. Cir. 1983)).

For recovery under the implied contract for bids to be fairly and honestly considered, a plaintiff has to establish arbitrary and capricious action, or an abuse of discretion by the government.  *Keco Indus., Inc. v. United States*, 492 F.2d 1200, 203 Ct. Cl. 566 (1974).  One factor to consider in this regard is a proven violation of pertinent statutes or regulations.  *Keco*, 492 F.2d at 1203-04, 203 Ct. Cl. 574.

Thus the 5 U.S.C. § 706(2)(A) arbitrary, capricious, an abuse of discretion review standard specified for procurement protests under 28 U.S.C. § 1491(b)(4) is essentially the same as that established for the implied contract requiring fair and honest bid consideration.  The major difference between a protest brought under 28 U.S.C. § 1491(b)(1) and one brought pursuant to an implied contract under 28 U.S.C. § 1491(a)(1) is the equitable relief which is available for the section 1491(b)(1) protest, but not for breach of the implied contract.  Only monetary relief is available for breach of the implied contract, comprising the costs incurred in preparing the

proposal and bid.  *Keco Indus., Inc. v. United States*, 428 F.2d 1233, 1240, 192 Ct. Cl. 773, 785 (1970).

In *Keco* the disappointed bidder filed suit in the Court of Claims after the procurement contract was awarded.  428 F.2d at 1236, 192 Ct. Cl. at 777.  In this post-award suit the court's jurisdiction to resolve the protest in the context of the implied contract for fair and honest bid consideration was established.  428 F.2d at 1237, 192 Ct. Cl. at 780.  Subsequently, when Congress, in section 133(a) of the Federal Courts Improvement Act of 1982, Pub. L. No. 97-164, 96 Stat. 25, 39-40 (1982), added equitable power, to afford complete relief in the context of the implied contract for fair and honest consideration, Congress restricted the exercise of this equitable power to pre-award protests – those where the suit was filed by a bidder before the contract sought was awarded.  *United States v. John C. Grimberg, Co.*, 702 F.2d 1362, 1374 (Fed. Cir. 1983).  The relief available in a post-award suit filed in the Claims Court by a disappointed bidder, for a period of time after 1982, would be limited to a recovery of incurred proposal and bid costs.  *Grimberg*, 702 F.2d at 1377 n.23.

In *Electro-Methods, Inc. v. United States*, 728 F.2d 1471 (Fed. Cir. 1984) a bidder for several government contracts filed suit alleging an unfair suspension from contracting.  The government contested the Claim Court's jurisdiction on the basis that Electro's suspension "is separate and distinct from the bid solicitation process over which the Claims Court and its predecessor the Court of Claims have traditionally exercised jurisdiction."  *Id*. at 1475.  The Claims Court proceeded to assert jurisdiction over Electro's suspension claims and the Federal Circuit affirmed the Claims Court action in this regard as follows, 728 F.2d at 1475 (footnotes omitted):

> [3]  We do affirm, noting the specific factual circumstances of this pre-award case.  When Electro filed its suit below on September 19, 1983, it listed 32 Air Force solicitations for spare parts on which it had bid.  Subsequent factual investigation, as noted above, whittled down this number.  Nevertheless, at the time Electro asserted its claims it stood on solid ground as regards its implied contractual relationship with the Government, which by soliciting and receiving Electro's bids had warranted that it would fairly and honestly consider them.  The fact that Electro's particular claims concerned its allegedly unfair suspension

- 12 -

under DAR § 1-606 does not change this analysis, because the effect of that suspension was (or would have been) to cause Electro to lose the award of contracts on which it had already bid and on which it was, at least in some instances, low bidder. We therefore affirm the Claims Court on its exercise of jurisdiction over this case.

In *IMCO, Inc. v. United States*, 97 F.3d 1422, 1425 (Fed. Cir. 1996) the Federal Circuit stated that "[t]he Tucker Act does not give the court jurisdiction to review the propriety of an agency's decision to debar contractor, however; such a challenge must be brought in district court under the Administrative Procedure Act, 5 U.S.C. §§ 701-706 (1994)." However, in commenting on its previous *Electro-Methods* ruling, the Federal Circuit noted that "outstanding" solicitations permitted the trial court to inquire into the propriety of Electro's suspension. 97 F.3d at 1426. In *IMCO* the Federal Circuit also ruled that the Court of Federal Claims had jurisdiction to review the propriety of the proposed debarment since this action precluded an award to IMCO under FAR 9.405 which, in turn, resulted in cancellation of the procurement. *Id.* at 1425. *IMCO* thus recognizes that a direct challenge to suspension from contracting with the government, divorced from any connection with a pending procurement, belongs in a district court, whereas the Court of Federal Claims correctly exercised implied contract jurisdiction to resolve allegations of error in suspension actions affecting specific procurements.

*IMCO* in no way detracts from the ruling in *Electro-Methods* that under the implied contract for fair and honest bid consideration, the Court of Federal Claims' jurisdiction extends to the review of alleged violation(s) of regulations or statutes, concerning the suspension or debarment process, which has a direct impact on the award process for a specific federal government contract(s). As *Electro-Methods* is controlling precedent, and it is clear that the DLA suspension action mandated that FAS be removed from consideration for an award of the TSBMC, jurisdiction to review the suspension exists, at least under the implied contract for fair and honest bid consideration.

Relying on the expansive interpretation of the 28 U.S.C. § 1491(b)(1) phrase, "or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement," in *RAMCOR Services Group, Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999), plaintiff, to obtain equitable relief, seeks to place the court's jurisdiction to review the DLA suspension action under this language.

The phrase in question was part of the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, 110 Stat. 3870 (1996) ("ADRA"). Under the ADRA, the Court of Federal Claims' jurisdiction over bid protests was enlarged to include equitable relief in post-award matters. Concurrent procurement protest jurisdiction in the district courts was terminated after January 1, 2001, leaving the Court of Federal Claims as the sole source for resolving such protests. *See Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1079 (Fed. Cir. 2001).

It is considered likely that the phrase in question is sufficiently sweeping in scope to accommodate, in a procurement protest action, review of well pleaded allegations of a regulatory or statutory violation(s) in a suspension or debarment process that directly impacts a specific procurement action, such as an award or a competitive range determination. However, it is not necessary to resolve this matter at this time. If it were concluded that the court lacks jurisdiction under 28 U.S.C. § 1491(b)(1) then, as discussed above, controlling precedent demonstrates that jurisdiction is present under 28 U.S.C. § 1491(a)(1). Resolving the scope of 28 U.S.C. 1491(b)(1) is an issue relevant to the relief available if liability is found.

## B.   The Decision to Suspend FAS

At the time that the DLA suspended FAS it was one of the two competitors for the TSBMC and its economic interest would be directly affected by obtaining or not obtaining the contract award. *See Am. Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001). FAS, as it existed at that time, had a substantial chance of receiving the contract in that following evaluation of the offerors' FPRs, the Air Force SSET recommended that the award go to FAS as the only technical acceptable offeror. *See Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006). The DLA suspension compelled the contracting officer to remove FAS from competition for the TSBMC, so that were the suspension action found to be erroneous the error would be prejudicial. FAR 9.405; *Galen Med. Assoc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004).

Plaintiff's basis for contesting the DLA suspension of FAS is its assertion that FAS did not qualify as an affiliate of a suspended business concern under the following definition of "affiliates" in FAR 9.403:

> *Affiliates*.  Business concerns, organizations, or individuals are affiliates of each other if, directly or indirectly, (1) either one controls or has the power to control the other, or (2) a third party controls or has the power to control both.  Indicia of control include, but are not limited to, interlocking management or ownership, identity of interests among family members, shared facilities and equipment, common use of employees, or a business entity organized following the debarment, suspension, or proposed debarment of a contractor which has the same or similar management, ownership, or principal employees as the contractor that was debarred, suspended, or proposed for debarment.

As the affiliates test is based on "control," FAS asserts that Taos, as a 49% joint owner of FAS, could not control FAS and that FAS was not controlled by any entity on the EPLS.

However, FAS did not, in its response to DLA, present this argument and seek a decision by DLA on its "affiliate" status.  In fact, as discussed *supra* in the "Facts," its response to DLA noted that it could appreciate the present responsibility concerns raised by the PWC indictments and understands why DLA is interested in identifying those business concerns that are controlled by PWC.  It noted that Agility [Taos] was identified as an entity controlled by PWC and that there were legitimate questions about connections between Agility [Taos] and other government contractors that apparently led to FAS's suspension.  FAS stated, "[w]hile it could be argued that FSSI, as the majority owner of FAS and FAS2, has always been in control of FAS and FAS2, FSSI has taken affirmative action to totally eliminate Agility's [Taos] interest in FAS and FAS2."  (AR 002693-94.)

In short, FAS did not argue and present the affiliate issue it now seeks to raise, for DLA decision during the suspension process, as provided in FAR 9.407-3.  Rather, FAS chose to moot the issue by divesting the 49% ownership held by Taos-Agility.  In this circumstance an issue not raised administratively cannot properly be presented initially to a reviewing court.  Issues on which judicial review is sought must first be presented for resolution to the agency having the responsibility for administrative action.  By failing to present the affiliates issue to DLA, FAS cannot now present it, or any other issue not presented to DLA, for judicial review.  *Walls v. United States*, 582 F.3d 1358 (Fed. Cir. 2009); *Metz v. United States*, 466 F.3d 991 (Fed. Cir. 2006).

Since the affiliates issue is the main basis for plaintiff's assertion of DLA error and FAS rendered the issue moot by divesting Taos-Agility, no viable basis for finding DLA error in suspending FAS has been established. No issue FAS now asserts to claim DLA error was asserted to DLA for resolution in the administrative process.

**C.    The Air Force Decision Not to Reinstate FAS in the TSBMC Procurement**

The suspension of FAS required its removal from competition for the TSBMC. This left the Air Force with one offeror, VBR, for the contract award. After FAS divested its 49% owner, Taos-Agility, and DLA then removed FAS from the EPLS, FAR 9.405(d)(3) provided that the contracting officer "may, but is not required to, consider" the proposal FAS had previously submitted. Plaintiff asserts that the contracting officer's exercise of the discretion provided by FAR 9.405(d)(3) must be closely scrutinized to fulfill the mandates of the Competition in Contracting Act of 1984 ("CICA"), Pub. L. No. 98-369, § 2713, 98 Stat. 1175, 1182 (1984). *See Birch & Davis Int'l, Inc. v. Christopher*, 4 F.3d 970, 974 (Fed. Cir. 1993). The CICA requires full and open competition. 41 U.S.C. § 253(a)(1)(A). Competition is required so that "a sufficient number of offers is received to ensure that the government's requirements are filled at the lowest possible cost." H.R. Rep. No. 1157, 98th Cong., 2d Sess. 17 (1984). *See United States v. Thorson Co.*, 806 F.2d 1061, 1064 (Fed. Cir. 1986).

Defendant and intervenor argue that close scrutiny is not required for the FAR 9.405(d)(3) decision not to reinstate FAS, but if required, even under this level of scrutiny the decision was reasonable. Plaintiff argues that the contracting officer abused her discretion in deciding not to reinstate FAS and that the decision lacks a reasonable basis. FAS asserts that the contracting officer's concern with the delay involved in reinstating FAS was not reasonable. Reliance is placed on the short response time given to FAS in a draft list of questions concerning the responsibility determination the contracting officer would have to make had Taos-Agility remained one of the owners of FAS. However, there is a considerable difference between the time that would be required to explain the Taos-Agility function in an unchanged FAS proposal and the time required to redraft and submit a new proposal without Taos-Agility involvement and for the Air Force to complete the required evaluations and discussions on such a new proposal. The evaluations and discussions on the

proposal FAS submitted on May 22, 2009, were not completed until September 30, 2009.  (AR 002158.)  Plaintiff also indicates that the contracting officer on the date of issuing her seven-page "Justification" for not reinstating FAS had knowledge of the agency-level protest that FAS submitted on the same date requesting reinstatement.  Since an award could not be made until the protest was concluded, plaintiff argues that delay involving a new FAS proposal in the procurement, was not a reasonable concern because there would be delay in any event due to the protest.  FAS's protest does not refer to the contracting officer's Justification and the Justification does not refer to the protest, indicating that neither party had knowledge of the other's submission when drafting their own.  The fact that delay could occur from a protest submission in no way impacts whether the contracting officer's concern over delay a new FAS proposal eliminating Taos-Agility would engender was reasonable.

A close examination of the reasons given for the decision not to reinstate FAS after it had divested its Taos-Agility ownership leads to the conclusion that the reasons have a rational basis.  Delay was a factor and the contracting officer's Justification in this regard demonstrates a rational basis for the conclusion reached.  The full and open competition requirement of CICA was not violated.  There was competition up to the point where FAS was suspended and the price proposals of the two competitors were evaluated.  FAS did not change its price proposal in its FPR, whereas VBR substantially lowered its already lower price proposal in its FPR and retained this lower price up to award.  Based on this history, the contracting officer rationally concluded that with the substantial challenges ahead that FAS would face, were it to be reinstated, it was unlikely that FAS would lower its price proposed, when it had not done so previously.  In this circumstance, with the award to VBR, the Air Force obtained the lowest possible cost that competition, as required by CICA, was intended to achieve.

Finally, the contracting officer in her Justification for not reinstating FAS concluded that with the divesting of Taos-Agility, entities that FAS relied upon in its proposal for performance, resources and past performance, FAS's higher price, and the challenges ahead in submitting and obtaining successful evaluations for a new proposal, FAS did not have a reasonable chance to receive the award of the TSBMC.  In this procurement protest matter the issue is whether the agency action has a rational, reasonable basis.  *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001); *Honeywell, Inc. v. United States*,

870 F.2d 644, 648 (Fed. Cir. 1989).  For the reasons stated in the Justification issued by the contracting officer, the suspension of Agility-Taos, resulting in the removal of 49% of the ownership of FAS, and the challenges this presented to the viability of a new FAS proposal, comprised a rational basis for her conclusion that the reorganized FAS, at this stage of the procurement, had no reasonable chance of obtaining the award of TSBMC.  Plaintiff has failed to meet the heavy burden of demonstrating a lack of rational basis for the contracting officer's decision in the record of this protest.

### D.    Plaintiff's Allegations That The Air Force Did Not Conduct Meaningful Discussions With FAS And Conducted Unequal Discussions With VBR

Counts No. 3 and 4 of Plaintiff's Complaint, include allegations that after FAS was removed from the EPLS, the Air Force should have held discussions with FAS after it held reopened discussions with VBR.  In its Response to Defendant's and Intervenor's Motions to Dismiss and for Judgment on the Administrative Record, filed June 25, 2010, at page 46, FAS asserts "[i]n the final analysis, should this court find that FAS was improperly suspended or that the Contracting Officer acted unreasonably and irrationally in not reinstating FAS into the competitive range, FAS is entitled to discussions."

The court has concluded that FAS has not established error in its suspension on November 27, 2009.  Also, FAS has not successfully carried the heavy burden of demonstrating that the contracting officer's exercise of discretion under FAR 9.405(d)(3), in not reinstating FAS to the TSBMC procurement, lacked a reasonable or rational basis.  Plaintiff has not demonstrated that the contracting officer's conclusion concerning the reasonable chance of FAS obtaining the TSBMC award at this stage of the procurement lacked a rational basis.

In this circumstance, it is questionable if FAS retains standing to protest entitlement to discussions.  At this stage in the procurement, lacking a reasonable chance of obtaining an award, and not being reinstated to the competition FAS would appear to lack the requirements for standing as set forth in *Rex. Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006).  In any event, it is not reasonable for FAS to expect to obtain discussions when it has been excluded from the procurement.  No error has been shown in not affording discussions to FAS after its suspension and

the contracting officer's subsequent decision not to reinstate the substantially reorganized FAS to the competition.

### E.    Motion to Strike

Defendant has filed a Motion to Strike paragraphs 5-19, 23 of the Declaration of Gary Billions submitted as Exhibit E to Plaintiff's Complaint together with its Exhibit No. E1.  Defendant asserts that this "supplementation" of the protest record is contrary to the holding in *Axiom Resource Management Inc. v. United States*, 564 F.3d 1375 (Fed. Cir. 2009).  No reliance in this Opinion has been placed on the Declaration and its Exhibit E1.  The protest record, including Complaint Exhibits A-D, and the excellent briefs submitted by counsel for each party, have been the source utilized in resolving the issues presented.  As the Billions material was not utilized, it is concluded that the Motion to Strike is moot and for this reason is **DENIED** without prejudice to its renewal should the matter become relevant in any further proceedings.

-----------

### CONCLUSION

As no error has been established in the suspension of FAS and FAS has not demonstrated lack of reason or rationality in the contracting officer's decision not to reinstate the reorganized FAS to the TSBMC competition when its suspension terminated, it is determined that FAS is not entitled to the relief sought in its Complaint.  It is **ORDERED** that:

(1)  Defendant's and Intervenor's Motions to Dismiss are **DENIED**, but their Motions for Judgment on the Administrative Record are **GRANTED** and judgment shall so be entered;

(2)  Plaintiff's Motion for Judgment on the Administrative Record and Motion for Temporary Restraining Order and Injunctive Relief are **DENIED**.

s/ James F. Merow
James F. Merow
Senior Judge